UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID BAKER,

        Plaintiff,                         CIVIL ACTION NO. 12-14530

vs.

                                         DISTRICT JUDGE STEPHEN J. MURPHY, III

COMMISSIONER OF                  MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.**     **RECOMMENDATION:** The undersigned recommends that Plaintiff's motion for summary judgment (docket no. 10) be **DENIED**, Defendant's motion for summary judgment (docket no. 14) be **GRANTED**, and Plaintiff's complaint be dismissed.

**II.**     **PROCEDURAL HISTORY:**

Plaintiff protectively filed an application for supplemental security income on February 18, 2010, alleging disability beginning February 18, 2010. (TR 127-30). The Social Security Administration denied benefits and Plaintiff filed a timely request for a *de novo* hearing. On June 2, 2011 Plaintiff appeared without counsel in Traverse City, Michigan and testified at a hearing held before Administrative Law Judge (ALJ) Janice E. Shave. (TR 28-73). Vocational Expert (VE) Adolph Cwik also appeared and testified at the hearing, as did Plaintiff's mother Bertha Baker. In a June 22, 2011 decision the ALJ found that Plaintiff was not entitled to disability benefits because he remained capable of performing a significant number of jobs that exist in the national economy. (TR 16-24). The Appeals Council declined to review the ALJ's decision and Plaintiff filed a timely

complaint for judicial review. The parties filed cross motions for summary judgment which are currently before the Court.

### III. TESTIMONY OF PLAINTIFF AND HIS MOTHER AND MEDICAL EVIDENCE

#### A. Plaintiff's Testimony

Plaintiff was forty years old on the date the application was filed. He testified that he lives alone in a house and he provides care for two dogs and two horses. (TR 40-42). He testified that he injured his back, right knee, and both shoulders at work. (TR 44-45). He claims that his parents have supported him since his disability. (TR 38). Plaintiff testified that he mows his lawn, cares for his personal hygiene, washes his laundry and dishes, prepares simple meals, grocery shops with his mother's help, and drives. (TR 43, 47-48). Plaintiff testified that he had carpal tunnel surgery on his right wrist and he has been doing well since the surgery. (TR 37-38). He testified that the doctors did not limit his activities in any way or order physical therapy following his surgery, but also claimed that he was placed on a five pound weight limitation. (TR 38, 69-70).

#### B. Testimony of Plaintiff's Mother

Plaintiff's mother testified that he loses his temper easily, he has expressed thoughts of suicide, and he is a slow learner. (TR 57-58). She testified that he sees a counselor and takes medication for depression.

#### C. Medical Evidence

The parties did not set forth separate accounts of the medical record or specifically challenge the ALJ's summary of the medical evidence. The Court, therefore, having reviewed the record in full, adopts the summary of the medical evidence as set forth in the ALJ's opinion and will make references and citations to the medical evidence as necessary in response to the parties' arguments.

**IV.     VOCATIONAL EXPERT TESTIMONY**

The VE testified that Plaintiff's past relevant employment consisted of unskilled, light work as a truss machine tender with a specific vocational preparation (SVP) code of two,[1] and very heavy exertional work as a construction laborer also with an SVP of two. (TR 62). The ALJ asked the VE to testify whether jobs were available for an individual of Plaintiff's age, education, and past relevant work experience who requires medium exertional work with the following limitations: (1) no more than occasional stooping, kneeling, crouching, and crawling, (2) no climbing of ropes, ladders or scaffolds, (3) must avoid concentrated exposure to vibration and all exposure to unprotected heights and explosives, and (4) able to understand, remember and carry out multi-step instructions but not able to work at a job that requires complex written communication, supervision of others, or abstract thought or planning. The VE testified that the hypothetical individual could perform medium exertional work as a dishwasher, counter supply worker, or motor vehicle assembler all with an SVP of two, comprising 30,050 jobs in the State of Michigan. (TR 63-65).

Next, the ALJ asked the VE if jobs were available for an individual who required light work in addition to the above stated limitations. The VE testified that the individual could perform Plaintiff's past work as a truss machine tender, or the individual could work as a video rental clerk or hand packager with 13,160 jobs in the State. (TR 65-66). If the individual also required a sit/stand option, he or she could perform work as an electrical assembler, small products bench

---

[1] "SVP is 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation'....The requisite time is ranked on a scale from one to nine, with nine representing the most time needed to learn a job." *Creech v. UNUM Life Ins. Co. of N. Am.*, 162 Fed. Appx. 445, 459 (6th Cir. 2006) (citing the Dictionary of Occupational Titles (DOT) app C ¶ II (4th Ed. 1991)). In the DOT, an SVP of one to two corresponds to unskilled work.

assembler, or cashier, comprising 92,250 jobs within the State. (TR 66-68). In addition, the individual could work as a gate guard at a light exertional level with an SVP of three and with 23,030 jobs within Michigan. (TR 68). If the individual is unable to maintain sufficient concentration, persistence or pace to work on a regular and continuing basis, eight hours a day, five days per work, or forty hours per week he or she would be unable to sustain full time employment. (TR 68-69).

## V.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff has not engaged in substantial gainful activity since his application date of February 18, 2010, and suffers from the severe impairments of carpal tunnel syndrome post surgery repair, obesity, status post fracture of L1-L2, and status post left knee meniscectomy, he did not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 16-20).

The ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform light work with the following limitations: (1) no more than occasional balancing, kneeling, stooping, crouching, and crawling; (2) no climbing of ladders, ropes, or scaffolds; (3) must avoid concentrated exposure to vibrations and hazards, and have no exposure to unprotected heights; (4) requires a sit/stand option allowing him to sit or stand alternately at will; and (5) unable to work at jobs that require complex written communication. (TR 20-22). The ALJ concluded that because Plaintiff is not capable of performing his past relevant work, but remains capable of performing jobs that exist in significant numbers in the national economy, he has not been under a disability as defined in the Social Security Act since February 18, 2010. (TR 22-24).

## VI.    LAW AND ANALYSIS

**A.     Standard Of Review**

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.     Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. § 416.920(a)-(f). If Plaintiff's impairments prevented his from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work

5

experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.     Analysis**

Plaintiff argues that the ALJ erred in finding that his depression was not a severe impairment, failed to fully develop the record of the unrepresented Plaintiff, and failed to address the opinions of his treating physician, Dr. Schultz. In addition, Plaintiff contends that he submitted sufficient new evidence to the Appeals Council to warrant a remand for further hearing.

*1.     The Step Two Determination*

Plaintiff contends that the ALJ erred in finding that his depression was not a severe impairment. An ALJ determines the severity of a claimant's medically determinable impairments at step two of the five-step sequential analysis. 20 C.F.R. § 920(a)(4)(ii). The severity analysis is simply a threshold determination. "[O]nce any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps" and it becomes "legally irrelevant" that other impairments are not considered severe. *McGlothin v. Comm'r*, 299 Fed. Appx. 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008)). This

is so because the second step is designed simply to screen out and dispose of baseless claims, which it accomplishes by testing whether the claimant has any severe impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities. *Anthony v. Astrue*, 266 Fed. Appx. at 457.

A severe impairment or combination of impairments is one which significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted).

The ALJ found at step two of the five-step sequential analysis that Plaintiff's carpal tunnel syndrome post surgical repair, obesity, status post fracture of L1-L2, and status post left knee meniscectomy constituted severe impairments. At the same time she found that Plaintiff's high blood pressure, diabetes, and high cholesterol were nonsevere impairments. In reaching her step two determination, the ALJ considered evidence pertaining to Plaintiff's depression and found that his condition was controlled with medication and caused no more than minimal limitation in his ability to perform basic mental work activities. (TR 18-19). The ALJ then proceeded to the remaining steps of the sequential analysis, where she stated that she considered all of Plaintiff's symptoms in light of the evidence of record and where she provided a brief discussion of the testimony of Plaintiff's mother that indicated that Plaintiff was depressed. (TR 22). The undersigned suggests that the ALJ's classification of Plaintiff's depression as nonsevere does not constitute reversible error.

*2.     Development of the Medical Records*

The next claim of error is that the ALJ failed to fully develop the medical record of the unrepresented Plaintiff. Social security proceedings are inquisitorial, not adversarial. *Sims v. Apfel,* 530 U.S. 103, 110–11 (2000). Consequently, an ALJ has an affirmative duty to investigate the facts and develop the arguments both for and against granting benefits. *Id.* at 111. The ALJ bears this burden whether or not the claimant is represented by legal counsel at the administrative hearing. *Sutton v. Comm'r*, No. 12-11043, 2013 WL 1117867, at *4 (E.D. Mich. Jan. 28, 2013) (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993)). However, under certain circumstances when a claimant is not represented by counsel, the ALJ has a heightened or "special duty" to develop the record and "to be especially probing in his questioning" to ensure a fair hearing for the claimant. *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983).

"Only under special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record." *Nabours v. Comm'r*, 50 Fed. Appx. 272, 275 (6th Cir. 2002) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986) and *Lashley*, 708 F.2d at 1051-52). *See also Wilson v. Comm'r*, 280 Fed. Appx. 456, 459 (6th Cir. 2008). Absent such special circumstances, the general rule is that the claimant bears the burden of proving disability and should do so by furnishing medical evidence in support of his claim. *Id. See also* 20 C.F.R. § 416.912(a).

At the beginning of the administrative hearing the ALJ observed that Plaintiff appeared at the hearing without counsel and informed him that he had the right to be represented by an attorney

or non-attorney who could explain medical and legal terms, communicate with the Social Security Administration on his behalf, and defend his legal rights. (TR 30-31). Plaintiff responded by stating that he had two previous representatives and he did not feel he needed a representative for the hearing. (TR 31). Plaintiff further stated that he understood his right to representation and that he wished to proceed without a representative.

The record reflects that Plaintiff was familiar with the contents of his medical records and he challenged entries in his records that stated that he had shoulder surgeries which he never had. (TR 33-35). He was also able to identify his doctors' records when the ALJ listed the records by medical provider. (TR 35). The record shows that the ALJ identified the medical records contained in Plaintiff's file and handed the records to Plaintiff for his review. (TR 36). Plaintiff reviewed the records and returned them to the ALJ, indicating that his mother had "been taking care [of] this stuff," that he didn't really understand it, and he assumed the records were "all right." (TR 36). He later stated that his mother understood all of his paperwork. (TR 53). Plaintiff's mother was called as a witness and she testified on his behalf, providing testimony that he was diagnosed with and received medication for depression.

Plaintiff filed an application for a period of disability and disability insurance benefits that was denied approximately eighteen months before he filed his application for supplemental security income benefits. (TR 38-39, 78-85, 127-30). During his hearing on his prior application, Plaintiff was represented by counsel. (TR 78). His hearing with respect to his present application for supplemental security income lasted more than one hour. During the hearing he answered the ALJ's questions and articulated his position to the ALJ. Plaintiff's mother also gave relevant testimony to the ALJ, particularly concerning Plaintiff's depression. Although Plaintiff was without counsel,

9

the record does not show that he was not capable of presenting an effective case or that he was unfamiliar with hearing procedures. Thus, the undersigned suggests that this is not a case in which the ALJ had a special, heightened duty to develop the record. *See Wilson v. Comm'r*, 280 Fed. Appx. at 459 (noting that the Sixth Circuit found that the ALJ failed to meet his special duty to develop a full and fair record in *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048 (6th Cir. 1983) because the ALJ conducted a superficial hearing examination of an unrepresented 79 year-old claimant who had a fifth grade education and difficulty reading, writing, and reasoning after he had suffered two strokes)).

*3.     New Evidence of Mental Health Treatment*

Plaintiff next argues that he submitted evidence to the Appeals Council which had not been submitted prior to the ALJ hearing and urges the Court to remand his claim for a hearing based on this new evidence. Plaintiff argues that the new medical evidence consists of psychiatric treatment records from September 27, 2010 through January 13, 2011 and contains the only psychiatric treatment evaluations in the record.

In cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial review is limited to the evidence that was part of the record before the ALJ. *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (citing *Richardson*, 402 U.S. at 401).

The court may still remand the case to the ALJ to consider this additional evidence but only

upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g).  *See Delgado v. Comm'r*, 30 Fed. Appx. 542, 549 (6th Cir. 2002).  The party seeking remand has the burden of showing that it is warranted.  *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).  "[E]vidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.' " *Foster*, 279 F.3d at 357 (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).  "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)).  "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (citing *Sizemore*, 865 F.2d at 711)); *see also Cotton*, 2 F.3d at 696 ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material.")(emphasis added)(citations omitted).

The documents at issue consist of a letter signed by Plaintiff's physician, Dr. Vincent Schultz, dated October 19, 2010 (TR 196), a letter signed by Community Mental Health outpatient therapist, Dr. David Agee, dated September 29, 2010 (TR 197), and treatment records from Community Mental Health dated September 27, 2010 through January 26, 2011.  (TR 239-54). Because none of the documents were before the ALJ, the Court may not review this evidence except to determine whether the case should be remanded for consideration of the additional evidence.  The

evidence must be new and material and Plaintiff must show that he had good cause for failing to incorporate this evidence in the record before the ALJ.

Since all of the newly submitted records pre-date the ALJ's decision, they are not new. Furthermore, Plaintiff has not established materiality by demonstrating that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence, arguing only that the records are material because they address Plaintiff's impairments during the time he alleged disability. Significantly, Plaintiff's medical record contains evidence of depression which the ALJ fully addressed. (TR 18-19, 230-35). Finally, Plaintiff has not met his burden of showing good cause for failing to produce this evidence to the ALJ, claiming that he did not produce the evidence in time for the administrative hearing because he was not represented by counsel. For these reasons, the undersigned suggests that Plaintiff has not established his right to a sentence six remand for a new hearing on the newly submitted evidence.

*4.     Opinions of Plaintiff's Treating Physician*

Next, Plaintiff argues that the ALJ failed to address the opinions of his treating physician, Dr. Schultz, that he could not sit or stand for prolonged periods. Plaintiff points to a March 17, 2011 letter signed by Dr. Schultz that states in relevant part that Plaintiff's "pain has limited his ability to do activities involving bending, sitting or standing for prolonged periods." (TR 236). Plaintiff interprets this letter to mean that he cannot sit or stand for prolonged periods. He contends that the ALJ's failure to "make a finding of the total time Plaintiff could sit during an eight hour day and the total time Plaintiff could stand during an eight hour day fails to give any deference to Dr. Schultz's opinion and fails to provide any 'good reasons' for not adopting a specific time during an eight hour

12

day that Plaintiff could sit and could stand." (Docket no. 10 at 16). Plaintiff also complains that the RFC failed to specify the frequency of the need to alternate between sitting and standing. He further claims that the ALJ failed to account in the RFC for Dr. Schultz's limitation on bending.

Social Security Ruling ("SSR") 83-10 states that the full range of light work requires standing or walking for a total of approximately six hours of an eight-hour workday, with intermittent sitting during the remaining time. SSR 83-10, 1983 WL 31251, at *6. SSR 83-12 addresses special situations in which an individual needs to alternate between sitting and standing:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy -- typically professional and managerial ones -- in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, must jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

SSR 83-12, 1983 WL 31253, at *4.

The ALJ did not identify the total amount of time Plaintiff could sit or stand in an eight hour workday, or indicate how frequently he would need to alternate between sitting and standing. However, she did find that Plaintiff was capable of performing a limited range of light work provided he could alternate between sitting and standing at will. This is not unlike the case of *Sharp*

*v. Barnhart*, 152 Fed. Appx. 503 (6th Cir. 2005), in which the Sixth Circuit considered an RFC that stated that the plaintiff could perform a range of light work provided he be given the opportunity to sit and stand/walk at his discretion over an eight-hour period. *Id*. at 506. The Sixth Circuit found no fault with the ALJ's instruction to the VE that asked the VE to testify as to whether jobs were available for a hypothetical person with the same limitations as the plaintiff and with the additional limitation that the worker be permitted to alternate between sitting or standing at his discretion. *Id.* at 506-07. Instead, the court found that the instruction was consistent with the directive in SSR 83-12 that "[i]n cases of unusual limitation of ability to sit or stand, [a vocational expert] should be consulted to clarify the implications for the occupational base." *Id*. at 507 (citing SSR 83-12).

SSR 83-12 specifically envisions situations where an individual requires the option to sit or stand at will. *Render v. Comm'r*, No. 12-10537, 2012 WL 6932154, at *10 n.8 (E.D. Mich. Nov. 27, 2012). Here, in accordance with SSR 83-12, the ALJ sought testimony from a vocational expert to determine whether jobs exist in the national economy that could be performed by an individual with Plaintiff's limitations. The ALJ presented several hypothetical questions to the VE, one of which asked the VE whether jobs exist for an individual with the same limitations as Plaintiff but who required light work and an option to sit or stand at will. In response to the hypothetical question, the VE testified that an individual requiring a sit/stand option who had the same vocational profile and limitations as Plaintiff could perform the jobs of an electrical assembler, small products bench assembler, or cashier. (TR 66-68).

Plaintiff argues that the ALJ assigned great weight to the opinions of Dr. Schultz but failed to address his opinion that Plaintiff could not sit or stand for prolonged periods and failed to include a limitation for bending in the RFC. Contrary to Plaintiff's assertion, Dr. Schultz stated in his March

14

17, 2011 letter only that Plaintiff's "pain has *limited* his ability to do activities involving bending, sitting or standing for prolonged periods." (TR 236) (emphasis added). He further stated that Plaintiff's pain is helped, although reportedly not resolved, with oral pain medication. The ALJ accounted for Plaintiff's limitations in his ability to engage in prolonged sitting or standing by incorporating a sit/stand option into the RFC and hypothetical questions to the VE. In addition, she accounted for Plaintiff's bending limitation by providing for no more than occasional stooping and crouching. *See* SSR 83-14, 1983 WL 31254, at *2 (describing two types of bending: "stooping (bending the body downward and forward by bending the spine at the waist) and crouching (bending the body downward and forward by bending both the legs and spine.")). Accordingly, the ALJ did not fail to address the opinion of Dr. Schultz with regard to Plaintiff's sit/stand or bending limitations.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: September 25, 2013         s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: September 25, 2013         s/ Lisa C. Bartlett
                                  Case Manager